Let's let everyone get settled. May it please the Court, I'm Mike Wallace. I represent eight current and former members of the Mississippi Legislature who have been serving in the Mississippi Legislature for a number of years, and I will begin, as I must, with jurisdiction. Jurisdiction in this Court depends on who the appellants are. Jurisdiction in the trial court depends on who the plaintiffs are. These appellants are elected legislators. They're not parties to the case. The requirement that they provide evidence cannot be reviewed after final judgment because they will not have standing to appeal the final judgment. It must be reviewed now or not at all. This Court in Cates v. Carr held that a non-party unsuccessfully asserting a governmental privilege may appeal under the collateral order doctrine, and the Eleventh Circuit followed that holding as it was bound to do in the Hubbard case. The plaintiffs say there's no jurisdiction here because those cases apply only to the actual production of the documents themselves, and that you are not entitled to appeal all the work you have to do to find the documents and prepare a log. They cannot, do not, explain why relief should be available only at the final step of the long process, and indeed, the log itself provides evidence which we say is privileged. If Constituent Smith writes to Senator Jones about the airport, and that is reviewed, that if you can't get the letter from Senator Jones, you can start going after Constituent Smith. Okay. So why don't you move on then from the jurisdictional question and go to the substance of the issues that you raise? Part of the substance, Your Honor, is the jurisdiction in the district court, which under United States Catholic Conference we're entitled to raise, that you cannot serve a subpoena if the district court doesn't have jurisdiction. In this case, the plaintiffs, as I've said, are private citizens alleging violation of the 14th Amendment as taxpayers and as citizens. Only the taxpayers' claim keeps this case in federal court. The airport authority still has a state law claim pendant to this, but all we're talking about here is the federal claim, and there's no jurisdiction unless they've suffered a cognizable injury. Paragraph 121 of the complaint says they are deprived of effective and meaningful participation in the affairs of Jackson Medgar Evers International. That's the only injury. They don't say why. It is a legally protected interest, which is concrete and particularized, as Lujan requires. We don't think it is. They don't say what part of the Constitution that right comes from. They have not established, not even attempted to establish standing, so the district court has no jurisdiction to enforce a subpoena against us. But to the merits, Your Honor, as you've questioned, I don't want to say much about the Jefferson community case. It is thoroughly discussed in our brief, and I think you have a better idea than I do whether its dictum are homing. We think that it is dictum because the real holding in that case was the parish was not a party under the Medicaid Act. All the preliminary defenses that the panel rejected were therefore not necessary to the holding and are not binding. But even if every word this court said in the Jefferson community is binding. Judge Southwick wants to ask you a question. I'm sorry. I didn't see you. I thought maybe you were giving one sentence before responding. I'm too soft-spoken. I'm sorry, Mr. Wallace. It seems to me before you leave the Jefferson community, I want to ask you, is there any law, I didn't see it in the brief, have you discovered any law that would make a distinction between the members of a legislative body at the municipal level and state legislators insofar as privilege is concerned? It has been thoroughly argued in every case where it's come up, whether it was Bogan or any of the others, but for the most part, those distinctions have not been upheld. The courts have said if it's a legislative act at whatever level, it's privileged. So I simply say that question was not considered in Jefferson community and it's been carefully discussed every time it's come up. I think it should be carefully discussed before you conclude that it applies to these state legislators. But again, even if everything in Jefferson community is holding, even if you follow the language in Perez v. Perry, it does not resolve the two issues in this case. And the first is whether the reasons for passing legislation are privileged in the sense that legislators cannot be compelled to disclose them. And that's the language from Jefferson community that I think the panel was saying it wasn't deciding. It was saying, we assume that's true, you still lose. Arlington Heights, equal protection cases, legislators' motives are relevant. Relevance isn't the question here. The question, the whole point of a privilege is to keep you from getting evidence that is relevant. If it wasn't relevant, you'd never get to the privilege question. Arlington Heights says that motivation is relevant, but it also says that only in extraordinary instances will legislators be required to provide evidence on that and that it's generally privileged. There is not a case anywhere that says legislators can be compelled to provide evidence of their motives for passing the law. There used to be, it was Benesec on which the district court relied. That's the only case that's ever said you can discover a motive and the Supreme Court reversed it two weeks ago. So there isn't a case out there anywhere that allows discovery of motive. And not even Perez v. Perry, the case that this court cited in Jefferson community, that initial opinion said here's the balancing test we're going to apply. When they actually applied it and one of the Texas legislators said that he should not be required to disclose his thought processes, the court upheld the privilege. Thought process, it seems to me, is broader than motives. If you can't get thought processes, you can't get motives. So there is no case anywhere that allows them, certainly not Jefferson community, not Perez, not Rodriguez where they didn't get evidence of motive either. There is no case anywhere that says you can get evidence of motive. And there are multiple courts of appeals that say you can't. In addition to the Hubbard case in the 11th Circuit, you've got the Rowland case in the 2nd Circuit, you've got the Burtnick case in the 4th Circuit, and most recently the very close to this one, Judge Smith, the question in that case was whether the City Council of Los Angeles racially discriminated in a redistricting case, again racial discrimination like Arlington Heights, in the 9th Circuit specifically held this is not one of those extraordinary instances where you're entitled to get evidence of motive. They didn't allow it. It shouldn't be allowed here. This court should not be the first court of appeals and right now the only court that would allow evidence of motive. I want to move on to the other question in the case, which is third-party communications. And that's one where we do not have controlling authority from the Supreme Court. We don't have controlling authority from this court. We don't have much authority anywhere. But your position doesn't really make much common sense that communications that have already been disclosed to outside persons can be privileged. I mean, there's a lot of case law on that in attorney-client privilege. I know that's not what we're dealing with here. So just explain to us why we should feel comfortable with your position that disclosed matters nevertheless aren't supposed to be disclosed. There is a difference between disclosure and the initial conversation itself. If Senator Smith writes Senator Jones and Senator Jones gives the letter to the newspaper, that's a disclosure. That's a waiver, at least by Senator Jones. I don't know whether Senator Smith would have waived anything at that point, but that's a classic waiver. There's been a communication and we've toned it to a non-party to the communication. The question here is the protected nature of the communications in the first place. If a constituent calls a congressman or a member of the legislature and says, I want you to do something, this is my opinion, this is what I'd like you to do, that's not a disclosure. That's a communication, like a man talking to his wife or like a lawyer talking to his client. Now if you disclose that to the press, then you've got a waiver. But the initial communication itself isn't a waiver and the Second and Ninth Circuit have recognized that. In the Almonte case, which agreed, is an immunity case, not a privilege case, but it involved the city council. The city council was taken over by the Republicans who promptly fired the Democrats and they got sued. And it turned out that the city council members had conferred before the vote with outsiders, including local party officials. And the Second Circuit says it doesn't matter who you confer with, you're entitled to confer with people before you vote. If it's a conference that you're using to inform a legislative act, it's a privileged conference and it need not be disclosed and it cannot form the basis of liability. The Ninth Circuit case in Miller, again it applied to a congressman, not to a state legislator, but the Ninth Circuit in Miller took that and said if there's immunity here, there's privilege here. The privilege is commensurate with the immunity. They wanted to know where the congressman had gotten information. And the Ninth Circuit said the congressman doesn't have to tell you. It is important for congressmen and for state legislators to have information. We want to encourage that. Constituents have a First Amendment right to communicate with their representatives. We don't want to discourage that. Whistleblowers may want to come to representatives in order to provide information in support of reform. We don't want to discourage that. And if those people know that their communications will be revealed in courtrooms and they themselves may be called to testify, those sources of information will dry up. That was the reasoning in Miller. I hope you're going to save some time to address the privilege logs. The which? The privilege logs. The privilege log, as I've already said, the privilege log on its face contains information which under the third-party doctrine we think is covered. I will go back to that and say Puente, Arizona took Miller and Almonte and applied it to a state legislator correctly, we believe, and I think those are privileged. Now, if you put all those names in a privilege log, you've already disclosed third-party information that ought to be privileged. But doesn't the privilege log itself, the rule that provides for privilege logs, allow you to write those logs in such a way to protect privileged information? And we haven't gotten to the point yet. It seems to me what you're really talking about is the privilege log you would write would not say very much. And they would dispute the sufficiency of those logs and you'd have that worked out. But we're not to that point yet. You have the Hubbard case, but that's a First Amendment case. And we have to work through whether that law would apply to what we're dealing with here. But if we get to where you're not completely privileged from the revelation of all information, and we're far from that, we haven't dealt with that, it does seem to me that a privilege log could deal with it from your viewpoint where nothing privileged would be revealed. And if it's so scant that the other side wants to say, Judge Ball, Judge Reeves, we need your help, that's where that dispute gets initially resolved. And assuming for sake of argument that the log could be done in a way that did not reveal privileged information, you still have two problems, one of which is practical. The point of the privilege is to keep legislators from being diverted from their duties. And in modern discovery, you are more diverted from your duties by digging for electronic in court and talk. The diversion is still there, and it's still something that Congress would have wanted to protect against. But the Hubbard case, even though it's a First Amendment case, it is as close as you can get to all fours with this case, because the issue in Hubbard was you had the right to do this, or you may have had the right to do this, but the plaintiff said you did it with evil in your heart. And so we're entitled to a privilege log and to further discovery so we can determine whether you have evil in your heart. That's the 14th Amendment claim here. Nobody says the state lacks power to reconstruct a regional airport. So do you take the position that you should not have to produce logs at all of anything that you say is privileged? In this case, Your Honor, because all they're looking for is motive and because motive is undiscoverable under four court of appeals decisions, we think Hubbard is right that you shouldn't be placed to the burden of producing a log of documents that you're never going to be required to produce, because they're all protected as motive. There may be a case somewhere where it's a different constitutional question and it's not motive. So has the possibility been explored of in-camera review of the privileged documents? The possibility of in-camera review has not yet been explored because we haven't gotten to that point, but you still have the burden question that you're supposed to—we've still got to dig them out. These are electronic documents. This is not just a question of old-fashioned paper files. It's a lot of work. What if your argument—much of your argument, it strikes me, is very dependent upon the fact that this is an absolute privilege and not a qualified privilege. Every privilege is qualified to some extent. I mean, Gillett qualifies it and says it doesn't apply in criminal cases. But in this case, in this civil case, when it's about motive, I think it applies. I don't think you have to say absolute, but in this case, if all they're looking for is motive and we know motive isn't discoverable, why are we going through this very expensive exercise that Tenney says the legislature shouldn't have to go through? That's why we don't think we should produce a log. We think motive is privileged, and we think it ought to stop right here. We thank the Court. You've saved time for rebuttal, Mr. Warren. Indeed, Your Honor. Ms. Merritt? Thank you, Your Honors. Your Honors, I will be arguing the substantive arguments of our case. My colleague, Mr. Lewis, will be using my last five minutes to argue the standing question. This appeal stems from the legislator's refusal to produce a privilege law, identifying all correspondence documents and communications for which legislative privilege is asserted. Recognizing the qualified nature of legislative privilege, the District Court partially granted the legislator's motion to enforce subpoenas by requiring them to produce a privilege law. It is this simple instruction to produce something so customary, Your Honors, as a privilege law that has brought us here today. Legislative privilege for state legislators is not absolute. And I believe that I just heard Mr. Wallace agree in stating that every privilege is qualified, and that he would say that it wasn't absolute, and I can tell Your Honors today that I agree with him on that. This Court's case in Jefferson Community Health Centers forecloses any argument that legislative privilege for state lawmakers is absolute. The Court reasoned in that case that while the common law legislative immunity for state lawmakers is absolute, legislative privilege for state lawmakers is, at its best, qualified. The Court further expounded by stating that this qualified nature has to be strictly construed and accepted only in very limited situations where permitting a refusal to testify or excluding relevant evidence has a public good.  Well, let's assume that you . . . that you . . . here . . . the district . . . we uphold the district court's requirement that you create a privilege law, and that's done routinely in most privilege cases itself. Now there . . . now you have a law. What follows from that? The . . . normally what comes from that is that the district judge is going to . . . or some of them are going to look at this and determine by some metric whether or not this should be produced or not. Now what standard would they apply there? It's not . . . it's not an absolute privilege. It would be a qualified immunity. What does it take to overcome a qualified immunity, and what is it? Judge Higginbotham, I believe that the district court would follow the five factors that it set out in its order in deciding this matter, and if the court may recall, the district court's five factors, it looked at first the relevance of the evidence sought to be protected, and we know that that's motive, and in this case, motive is very important because one of the federal . . . the federal claim here is an equal protection claim. Well, let me . . . let me . . . let me just pick you up a little bit on motive versus purpose. Yes, Your Honor. Well, you go back to Washington v. Davis, which is one of the watershed definitions of the reach of the equal protection clause, and it requires a purpose, right? Yes, Your Honor. Now, the follow-up, the question of motive, however, as Justice Black has pointed out . . . pointed out on many occasions, addresses the . . . what individually motivated or actuated a particular vote, et cetera, et cetera, and the court has then said that doesn't take you anywhere. If you . . . because then it would be a pointless exercise in that . . . if they go back and reenact the legislature and that same bill and say that . . . but there's a different . . . but you're between motive, as you articulate it, and legislative purpose, so I'm having some trouble exactly what you . . . what you're attempting to get at here. In other words, you're trying to get . . . it doesn't . . . you have a piece of legislation that comes out of the legislature. What actuated a particular individual to vote for that, for all manner of things? It may be because his pal Joe is pushing the bill, all kinds of reasons, but that's not . . . we're talking about legislative purpose, so the focus of purpose is not so much the individual members of Congress, of the legislature. It is what the overall objective was, and the focus of that is on the legislation. What is the relevant . . . what is the district court going to do if you get the law? What are you going to ask them to look for? Your Honor, I'm going to ask them, as it relates to that first factor with motive, what we're the appellees are bringing is based on the proposition that the . . . Did he act with a racial purpose? Yes, Your Honor. It's for a racial purpose, based on the proposition that the passage of 2162 was racially discriminatory. I'm not picking that up on language, but there's a difference between the two, and when you tell me that you're looking for racial purposes, that they're actuated by impermissible consideration, that's purpose. Yes, Your Honor. We're looking for racial purposes, and as the court knows, there are several cases within this circuit that have stated that statements by legislators are relevant to show the discriminatory intent in passing legislation, and those are the cases of Hall v. Louisiana and Veazey v. Perry, that we submitted to the court. Counsel, it's one thing to say those are relevant, but it's something else to say, how do you get those statements? I mean, the practical effects that courts have talked about, that you don't, at least in current times, get a lot of public statements that would be racially discriminatory, regardless of what you might suspect is really going on and what seems to be behind this case, it doesn't mean, just because that's relevant, getting back to Mr. Wallace's point, that you have the right to get it in the way you're now talking about. So what is your best case that you're entitled to get from the legislators? You're not talking yet about putting them on the stand, and I would read Olinkin Heights that that's going to be a very steep hill to put them on the stand, to depose them. That's not too much different than putting them on the stand. So what's your best case to say that you can get the kind of material, despite legislative privilege, that you're seeking in this case? Your Honor, I think the best case that we would rely upon would be a case that's been cited by the Fifth Circuit, which is the Rodriguez v. Pataki case that sets out those five factors that was cited by the Fifth Circuit in the Jefferson Community Hospital case, and it was also cited by courts within the Fifth Circuit in Perry v. Perez, Hall v. Louisiana, and the Veazey v. Perry case. Judge Southwick, you just raised a question that really segues into the second factor that the district court analyzed in looking at the qualified nature of the privilege, and that was the availability of other evidence. Judge Smith, you may recall that we were referring, Your Honor, in November in Houston on the issue that was the subject of a petition for writ of mandamus as to whether we were entitled to depose the governor's chief of staff. In the court's opinion in that case, the court instructed the appellees to look to other evidence, and the court specifically said that legislators that the chief of staff had conversations with regarding that legislation were sources of alternative means of getting that evidence to support the claims brought by the parties in this case. And that's exactly what the appellees have attempted to do here. We've attempted to seek out a source, the legislators identified by the court in ascertaining the additional evidence that's needed. One of the other, I think, the overriding factor that the district court looked at, which is factor number five that sums up the analysis that's done, is that the district court said that courts have an obligation to make a reasonable determination as to whether a party's opportunity to receive relevant information and accurate facts are substantially weighed in balance of a great, particularly federal interest. In this case, we have that federal interest, which the court has hit upon in the Arlington Heights case. It makes it clear that the motivation does matter. And I would remind— Mr. Wallace referred to the Benesac case and also pointed out that the district court here relied on Benesac and that that's been recently reversed. Tell us how you deal with that. The court here, Your Honor, relied upon Benesac, but there are other cases such as the Hall v. Louisiana case that I previously mentioned and the Veasley v. Perry case that make it I think the district court, when it looks at the—as you play this out, when it looks at particular documents, it's going to be looking for whether or not there's any suggestion of race. Beyond that, they're not producible. Is that it? Your focus is on race, huh? Yes, Your Honor. Okay. So that would now have identified a metric that when it goes through, whatever is produced in the log, and find out if that in and of itself is relevant to or expresses a racial purpose. Is that pretty much it? Yes, Your Honor. In this case, the state of Mississippi has said that its legitimate nondiscriminatory reason was the purported economic impact that the airport has. So we would be looking at whether or not there were communications to show that that reason is not the true reason that there was some type of discriminatory animus. Your Honors, I think it's easy to forget that this particular appeal is actually about a privilege asserted, is applicable, and also for the court to make a determination, as was previously mentioned, about waiver. A privilege log would identify for us whether or not there have been communications with third parties that would fall outside of any type of legislative immunity qualified or not. And a privilege log is the only vehicle that the appellees have for being able to make that determination. I would ask, in closing, Your Honor, on my argument, is that the court would look at the factors that the district court reviewed in determining whether or not the facts of this case presented a significant interest for yielding the legislative privilege, and I submit to you that it does. What the legislators have argued to the court is that we don't need to produce a privilege log, but a privilege log is the only document that would allow the appellees and the court to make a determination as to whether or not the legislative privilege that's been asserted stands, and whether or not there are communications that have been waived. The privilege log is the only way that that determination may be made, and if there are no further questions for the court on those substantive issues, I'll yield to my co-appellee counsel. Thank you, Ms. Merritt. Mr. Lewis? Good morning, Your Honors. Although none of the defendants have moved to dismiss the underlying case for want of subject matter jurisdiction, the non-party legislators who are before the court today have questioned the standing of the individual airport commissioners to assert their federal constitutional challenges to the takeover bid. We do not dispute that this court can take up this question, but the allegations of the complaint are plainly sufficient to establish their standing. It's important to remember that this case remains at the pleading stage. Therefore, as the Supreme Court has recognized in Lujan, general factual allegations of injury resulting from the defendant's conduct may suffice, and in the Bennett case, the High was not fatal because it was easy to presume specific facts under which the petitioners would be injured. Relying on these decisions, this court has framed the applicable test this way. At the pleading stage, the court will not dismiss for lack of standing if the court can reasonably infer from the plaintiff's general allegations that he has suffered an injury in fact traceable to the challenged conduct that can be redressed by a ruling in his favor. The complaint in this case easily meets these tests. Although it's not alleged in so many words, the court can and easily should draw the inference from the complaint that the individual airport commissioners will lose their jobs if Senate Bill 2162 is permitted to take effect. This consequence flows inevitably from the legislature's elimination and replacement of the Jackson Municipal Airport Authority. So it follows automatically that the implementation of this legislation would have concrete, particularized and immediate impact on the airport commissioners. And because this result follows inevitably from the implementation of the statute, there's no issue of traceability. And because the consequence could be avoided were the court to enjoin implementation of the bill, there's obviously no issue of redressability. Now it is true that the commissioners are volunteers. But that does not mean that the loss of their jobs is insufficient to confer standing. There are legions of cases, most of them arise in the context of First Amendment retaliation claims, in which the courts of appeals have recognized that when volunteers lose their The Ninth Circuit has articulated why this is so in a very powerful way in the Highland case. Here's what the Ninth Circuit said. As a government volunteer, a person gains valuable experience and education in public administration. The opportunity to serve as a volunteer is also important because it provides an individual the satisfaction of making a contribution or giving something back to society. Several years ago, the First Circuit canvassed the law in this area and showed that the approach taken by the First Circuit, Second Circuit, Third Circuit, Seventh Circuit, Ninth Circuit, and Tenth Circuit, at least when state law treats volunteers as public employees, follows this approach. And Mississippi does treat volunteer public officials, like the commissioners of the Jackson Municipal Airport Authority, as public employees for various purposes. Let me give you a few examples. The statutory immunity statute applies to any appointed official, whether with or without compensation. The lobbying statute applies to any individual appointed to a position in local government, whether compensated or not. The ethics statute of Mississippi applies to any individual who receives a per diem or expenses paid, as the commissioners do in Jackson, for their public work. No court of appeals, this is what the First Circuit observed in the Barton case, no court of appeals has held that the loss of a voluntary position under such circumstances does not constitute an injury, in fact, sufficient to confer standing. Now, even if none of the plaintiffs here has a right to be a commissioner, their jobs as commissioners cannot be taken away on the basis of race without giving rise to an injury, in fact, that's sufficient to allow them to bring an action under Section 1983. That's the case that you have before you today. So we respectfully ask that you not dismiss the plaintiff's Section 1983 claims for want of standing, and instead that you affirm the district court's orders compelling the non-party legislators to produce privileged looks. May it please the Court, Counsel Opposite began by saying that a privilege log is customary, but the problem is a privilege log is useless, because the only thing they're looking for is motive, and no case allows them to get it. They said their best case was Rodriguez, I've got Rodriguez. What the Court said in Rodriguez is that you can get information about communications with the independent commission that acted on this bill before it went to the legislative floor. What you couldn't get in Rodriguez is the actual deliberations of the legislature, of individual legislators that took a place outside that independent commission, or after the proposed redistricting plan reached the floor of the legislature. That's their best case, and it says they can't get what they're looking for. So that makes the privilege log a useless waste of time, and Tenney says Congress in 1880, 1871, was worried about a waste of time for legislators in 1983 cases. Judge Higginbotham, I think you were addressing the question of whether legislative purpose in a 14th Amendment case may be different from the purposes and motives of individual legislators, and I think that is true. I think it's the Jewish war veterans case that talks about that in some detail and says that some evidence of individual motives may be relevant, and other evidence of individual motives may not be relevant, but it's still privileged. Whether it's relevant or not, you've still got the privilege problem. I can't help you very much on what might be relevant in this case, since I'm not defending. That's up to the governor and the attorney general. I'm here simply to assert privilege, and we have not heard a word that suggests that they're looking for anything but motive, and there's not a case that says they can get it. I will say a little bit about standing, and then I'll sit down. I'm glad, finally, to find out what plaintiffs think their standing is. This is now a job protection case. Job protection, or at least they'd like it to be a job protection case. Job protection cases are good under Section 1983. The Almonte case was a job protection case, and the Second Circuit says you still can't get the communications within the legislative body or with outsiders before you got to the legislative body, but it's not the case they pled. I understand that you are supposed to read things broadly and generously to see if you can come up with a claim, but you can't read this complaint and find a job protection claim in it. They told you what their injury was. They're suing not because they hold their jobs. They're suing as taxpayers and citizens, and I think they've got class representation language in there that's never come up, but what they say is, here's their injury. Effective and meaningful participation in the affairs of Jackson Medgar Evers International. They're saying every citizen and taxpayer in Hines County, and Jackson has that right. That's not what counsel just said this case is about. Now, can they go back and replete it? Can they establish standing? Maybe they can. We are at the pleading stage, or at least the defendants are at the pleading stage. My clients aren't defendants. This is the end of the road for us. If the court orders us to disclose confidential information, then it will be of no benefit to us six months from now when the pleading stage is over and the court says, oops, I never had jurisdiction in this case. Before you can order us to do anything, before the district court can order us to do anything, it has been determined it has jurisdiction. That determination has never been made. The argument here is contrary to their complaint and should not be accepted. On standing alone, we're entitled to belief. We think we ought to have it, both on standing and on the merits. Motive is protected, always has been. This court should not be the first one to put a chink in that armor, and we ask for reversal. Thank you. Mr. Wallace, your case and all of today's cases are under submission and the court is in recess under the usual order.